# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) |
|  | ) Criminal Action No. 10-251 (RBW) |
| DARREN UPSHUR, | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The defendant, Darren Upshur, is currently serving a 188-month term of imprisonment that was imposed by this Court following his plea of guilty to one count of unlawful distribution of fifty grams or more of cocaine base, also known as crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii) (2006). See Plea Agreement at 1 (Nov. 9, 2011); Judgment in a Criminal Case ("Judgment") at 2 (Feb. 15, 2012). Currently pending before the Court are the defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Def.'s Mot.") and his Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255 ("Def.'s Supp. Mot."), which "move[] this Court to vacate his sentence and enter an amended judgment sentencing him to time-served, in light of the Supreme Court's decision in Johnson v. United States, __ U.S. __, 135 S. Ct. 2551 (2015)." Def.'s Supp. Mot. at 1. Upon consideration of the parties' submissions,[1] the Court concludes that it must deny the defendant's motion for the reasons explained below.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the United States' Opposition to Defendant's Motion to Vacate Judgment Under 28 U.S.C. § 2255 and Supplemental Motion to Vacate Judgment ("Gov't's Opp'n"); and (2) the defendant's Reply Memorandum in Support of Motion and Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255 ("Def.'s Reply").

## I.    BACKGROUND

After the defendant entered his guilty plea, the United States Probation Office (the

"Probation Office") submitted to the Court its final Presentence Investigation Report (the

"Report" or "PSR"), which included a sentencing guidelines calculation pursuant to the United

States Sentencing Guidelines (the "Sentencing Guidelines" or "USSG"). See PSR at 1 (Jan. 18,

2012). The Report reflected a total criminal history score of six points based on two prior felony

convictions: (1) a 1999 distribution of heroin conviction adjudicated in the Superior Court of the

District of Columbia ("Superior Court"), see id. ¶ 36, and (2) a 2000 attempted robbery

conviction also adjudicated in Superior Court, see id. ¶ 37.[2]  Based on these convictions, the

Probation Office determined that the defendant qualified as a career offender pursuant to

§ 4B1.1(a) of the Sentencing Guidelines. See id. ¶ 24.[3]  Thus, although the Probation Office

recognized that "a criminal history score of six [would generally have] establish[ed] a criminal

history category of III," id. ¶ 39, because "[t]he defendant [wa]s a career offender[,] [ ] the

criminal history category [wa]s VI," id. ¶ 40. Accordingly, "[b]ased upon a total offense level of

---

[2] The Report identified four additional prior felony convictions; however, the Probation Office did not score these convictions because the sentences resulting from them were not eligible for scoring under the Sentencing Guidelines. See PSR ¶¶ 29, 31–32, 34. Under § 4A1.2(e), a prior sentence may not be counted unless it "was imposed within ten years of the defendant's commencement of the instant offense," "exceed[ed] one year and one month [and] was imposed within fifteen years of the defendant's commencement of the instant offense," or "exceed[ed] one year and one month[] . . . [and] resulted in the defendant being incarcerated during any part of such fifteen-year period." USSG § 4A1.2(e) (2011). Here, three of the unscored sentences were imposed over fifteen years before the criminal conduct charged in this case occurred and did not result in the defendant being incarcerated during that fifteen-year period, and, the fourth unscored sentence was imposed more than ten years before the criminal conduct charged in this case occurred and did not result in a prison sentence. See PSR ¶ 3 (reflecting that "[t]he criminal conduct charged in the Indictment [in this case] occurred on July 29, 2010"); id. ¶¶ 29, 31–32 (reflecting one prior sentence imposed in 1987 for 180 days, and two prior sentences imposed in 1989 for four years); id. ¶ 34 (reflecting a fourth prior sentence imposed in 1999 that did not result in imprisonment).

[3] Although the Probation Office did not explicitly identify which of the defendant's prior felony convictions formed the basis for its career offender determination, see PSR ¶ 24, it only added criminal history points for the defendant's 1999 distribution of heroin conviction and 2000 attempted robbery conviction, see id. ¶¶ 36–37. Thus, as the government correctly notes, see Gov't's Opp'n at 3, and the defendant does not dispute, see generally Def.'s Supp. Mot.; Def.'s Reply, these two convictions were the only convictions on which the Probation Office could have based its career offender determination, see USSG § 4B1.2(c)(2) (2011) (instructing that "the sentences for at least two of the [ ] felony convictions [must be] counted separately under the provisions of § 4A1.1(a), (b), or (c)"); id. § 4A1.1(a)–(c) (referring only to sentences that receive criminal history points).

31 and a criminal history category of VI," the Report calculated "the [applicable] guideline imprisonment range [a]s 188 months to 235 months." Id. ¶ 100.

The Court sentenced the defendant on February 1, 2012. See Judgment at 1. At the sentencing hearing, the Court "accept[ed] the [Probation Office's final Report] and [its] Guidelines [calculations] as accurate" without any objection by defense counsel, Def.'s Supp. Mot., Exhibit ("Ex.") A (Transcript of Sentencing Before the Honorable Reggie B. Walton (Feb. 1, 2012) ("Sentencing Tr.")) 3:8–10, 17–18, and, upon "consider[ing] all the various factors in deciding [ ] the appropriate sentence [ ], including the Guideline sentence," it concluded that a sentence at "the bottom end of the Guidelines" was appropriate, id., Ex. A (Sentencing Tr.) 7:17–21. Accordingly, the Court sentenced the defendant to a 188-month term of imprisonment. See Judgment at 2.

Subsequently, on June 26, 2015, the Supreme Court issued its decision in Johnson. See __ U.S. at __, 135 S. Ct. at 2551. On June 21, 2016, the defendant filed an abridged motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (2012), see generally Def.'s Mot., in accordance with the Standing Order issued by the Chief Judge of this Court, see Standing Order at 2 (June 2, 2016) (authorizing prisoners seeking post-conviction relief based on Johnson "to file an abridged motion[] pursuant to 28 U.S.C. § 2255[] . . . by June 26, 2016"). The defendant's motion, as supplemented on October 31, 2017, see Def.'s Supp. Mot. at 1, is the subject of this Memorandum Opinion.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") permits a federal prisoner in custody pursuant to a sentence imposed by a federal court to "move the court which imposed the sentence to vacate, set aside[,] or correct the sentence" "upon the ground that the

3

sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, it "limits the time in which a prisoner may bring such a motion," United States v. Cicero, 214 F.3d 199, 200 (D.C. Cir. 2000), providing that

> [a] [one]-year period of limitation shall apply to [any such] motion . . . [, and t]he limitation period shall run from the latest of—

> (1)   the date on which the judgment of conviction becomes final;

> (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

## III.   ANALYSIS

Under the version of the Sentencing Guidelines in effect when the defendant was sentenced,

> [a] defendant [wa]s a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a) (2011). The Sentencing Guidelines further defined a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

4

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 4B1.2(a). The clause "or otherwise involves conduct that presents a serious potential risk of physical injury to another" is known as the "residual clause." Beckles v. United States, __ U.S. __, __, 137 S. Ct. 886, 891 (2017).

The defendant contends that his "prior [ ] attempted robbery conviction could only qualify as a crime of violence under the residual clause" of § 4B1.2(a) of the Sentencing Guidelines, Def.'s Supp. Mot. at 3, and, thus, "his sentence was unconstitutionally, unlawfully, and unjustly increased based on an advisory [Sentencing] Guidelines provision that, as the Supreme Court recognized for the first time in Johnson, was so meaningless that this Court could not objectively, fairly, and reliably apply it," id. at 12. The government argues in response that the Court should deny the defendant's motion for several reasons, including that "his motion is untimely under 28 U.S.C. § 2255(f)," he "has procedurally defaulted the challenge he now seeks to raise," and "his claim is not cognizable under § 2255." Gov't's Opp'n at 7. The Court first addresses the defendant's timeliness argument, as that issue is potentially dispositive.

## A.    Timeliness Under § 2255(f)

"In most cases, the operative date from which the limitation period is measured will be the . . . date on which the judgment of conviction becomes final." Dodd v. United States, 545 U.S. 353, 357 (2005) (internal quotation marks and citation omitted). "Where, as here, 'a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals.'" United States v. Ingram, 908 F. Supp. 2d 1, 4 (D.D.C. 2012) (Walton, J.) (quoting Sanchez-Castellano v. United States, 358 F.3d 424, 427 (6th Cir. 2004)). Here, because the defendant did not notice an appeal from the judgment imposed by this Court on February 1, 2012, see

5

Judgment at 1, his judgment became final fourteen days thereafter, on February 15, 2012, see Fed. R. App. P. 4(b)(1)(A) (2012) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days . . . of[] the entry of [ ] the judgment . . . being appealed[.]"). Thus, because the defendant did not file the instant motion until over four years later, see Def.'s Mot. at 1, his motion is untimely under § 2255(f)(1), see 28 U.S.C. § 2255(f)(1).

Nonetheless, the defendant contends that his motion is timely pursuant to 28 U.S.C. § 2255(f)(3), which provides that a federal prisoner may file a § 2255 motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Specifically, he argues that his "motion satisfies the statute of limitations [under § 2255(f)(3)] because it was filed within one year from the date on which the Supreme Court[] in Johnson[] newly and initially recognized the right he asserts—the right not to serve a sentence increased because of the residual clause, which [ ] is retroactively applicable to cases on collateral review." Def.'s Supp. Mot. at 40. The government responds that "§ 2255(f)(3) does not apply" because "Johnson did not recognize the right that the defendant asserts," Gov't's Opp'n at 14, as it "recognized [only] a right not to be subject to a sentence imposed under the [Armed Career Criminal Act's ('ACCA')] residual clause" and "did not discuss the [G]uidelines . . . [or] recognize any rights related to the [G]uidelines' application," id. at 11. It further argues that the defendant's position is foreclosed by the Supreme Court's decision in Beckles v. United States, which demonstrated that "Johnson [does not] appl[y] to claims under the Guidelines." Id. at 10 n.3; see also id. at 9 (citing Beckles, __ U.S. at __, 137 S. Ct. at 895).

The Court's analysis must begin with the Supreme Court's decision in Johnson. In that decision, the Supreme Court considered a federal prisoner's challenge to the enhancement of his

sentence pursuant to the ACCA, which imposes "more severe punishment [upon a defendant] if he has three or more previous convictions for a 'violent felony,' a term defined [by the residual clause of the ACCA] to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" Johnson, __ U.S. at __, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B) (2012)). Specifically, it considered whether the ACCA's residual clause violated "the [ ] prohibition of vague criminal laws" contained in the Due Process Clause of the Fifth Amendment of the United States Constitution, id., which prohibits the government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," id. at 2556. In answering that question in the affirmative, the Supreme Court observed that "[t]wo features of the residual clause conspire[d] to make it unconstitutionally vague": first, it "leaves grave uncertainty about how to estimate the risk posed by a crime," id. at 2557, and second, it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony," id. at 2558. Based on these features, the Court concluded that "the residual clause produce[d] more unpredictability and arbitrariness than the Due Process Clause tolerates." Id. Accordingly, the Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." Id. at 2563.

Thereafter, in Beckles, the Supreme Court considered a prisoner's claim that, in light of Johnson, the "identically worded" residual clause in the post-Booker, i.e., advisory, version of § 4B1.2(a) of the Guidelines is also void for vagueness. __ U.S. at __, 137 S. Ct. at 890.[4] In rejecting the prisoner's claim, the Court observed that it "has invalidated two kinds of criminal

---

[4] The Supreme Court's decision in United States v. Booker made the Sentencing Guidelines advisory. See 543 U.S. 220, 246 (2005). Prior to Booker, the Guidelines were "mandatory and binding on all judges." Id. at 233.

laws as 'void for vagueness': laws that <u>define</u> criminal offenses and laws that <u>fix the permissible</u> <u>sentences</u> for criminal offenses," and the ACCA's residual clause invalidated in <u>Johnson</u> fell into the latter category, as it "required sentencing courts to increase a defendant's prison term from a statutory maximum of [ten] years to a minimum of [fifteen] years." <u>Id.</u> at 892. It further observed that, "[u]nlike the ACCA, [ ] the advisory Guidelines do not fix the permissible range of sentences[,] . . . [but] merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." <u>Id.</u> "Accordingly, [it held that] the [advisory] Guidelines are not subject to a vagueness challenge under the Due Process Clause[] [and t]he residual clause in § 4B1.2(a)(2) therefore is not void for vagueness." <u>Id.</u>

In the wake of <u>Beckles</u>, circuit courts are split as to how broadly to define the right recognized in <u>Johnson</u> for purposes of § 2255(f)(3). Although this Circuit has not addressed the issue, a majority of circuit courts have concluded, as the government does here, that the right recognized in <u>Johnson</u> must be limited to its holding that "the residual clause of the ACCA is unconstitutionally vague," and thus, the right "d[oes] not extend to other legal authorities such as the [ ] Guidelines." <u>Raybon v. United States</u>, 867 F.3d 625, 630 (6th Cir. 2017); <u>see</u> <u>United</u> <u>States v. Blackstone</u>, 903 F.3d 1020, 1028 (9th Cir. 2018) ("<u>Johnson</u> did not recognize a new right applicable to the mandatory Sentencing Guidelines on collateral review."); <u>Russo v. United</u> <u>States</u>, 902 F.3d 880, 883 (8th Cir. 2018) ("<u>Johnson</u> did not address the sentencing guidelines, and <u>Beckles</u> rejected a vagueness challenge to the advisory guidelines."); <u>United States v. Green</u>, 898 F.3d 315, 322–23 (3d Cir. 2018) ("[I]n light of <u>Beckles</u>, <u>Johnson</u>'s holding as to the residual clause in the ACCA created a right only as to the ACCA, and not a broader right that applied to all similarly worded residual clauses, such as that found in the advisory Sentencing Guidelines."); <u>United States v. Greer</u>, 881 F.3d 1241, 1247 (10th Cir. 2018) (rejecting the

defendant's claim based on a "right not to be sentenced under the residual clause of § 4B1.2(a)(2) of the mandatory Guidelines" because "[t]he Supreme Court has recognized no such right"); United States v. Brown, 868 F.3d 297, 301–02 (4th Cir. 2017) ("Petitioner's motion relies on a claimed due-process right to have his Guidelines' range calculated without reference to an allegedly vague [ ] Guidelines' provision. . . . Regrettably for [the p]etitioner, the Supreme Court did not recognize such a right in Johnson."), cert. denied, __ U.S. __, 139 S. Ct. 14 (2018); In re Arnick, 826 F.3d 787, 788 (5th Cir. 2016) ("Johnson did not address [§] 4B1.2(a)(2) of the Guidelines. Nor has the Supreme Court held that a Guidelines enhancement that increases the Guidelines range implicates the same due process concerns as a statute that increases a statutory penalty." (internal citation omitted)). By contrast, a relative minority of circuit courts have concluded that the Johnson right may be more broadly defined as "a right not to have [one's] sentence dictated by the unconstitutionally vague language of [a] mandatory residual clause," and, thus, may include a right not to be sentenced under the residual clause of § 4B1.2 of at least the pre-Booker era, i.e., when the Sentencing Guidelines were mandatory. Cross v. United States, 892 F.3d 288, 294 (7th Cir. 2018) (emphasis removed); see, e.g., Moore v. United States, 871 F.3d 72, 82 (1st Cir. 2017) (observing that it "makes sense" that "the rule [in Johnson] is broader than the technical holding" and that "one [could] describe the rule as being that the text of the residual clause, as employed in the ACCA, is too vague to provide a standard by which courts must fix sentences"); Vargas v. United States, Nos. 16-2112 (L), 16-2458 (Con), 16-2698 (Con), 2017 WL 3699225, at *1 (2d Cir. May 8, 2017) (permitting the petitioner to challenge his sentencing enhancement under the Guidelines in a successive § 2255 motion because "Beckles did not clearly foreclose the argument that [Johnson's] reasoning is []applicable to the [p]etitioner's circumstances, given that his sentence was imposed prior to . . . Booker").

9

However, the Court need not determine which of these views is correct because the right asserted by the defendant in this case falls outside even the broadest possible characterization of the right recognized in Johnson. As the Fourth Circuit has observed, "a Supreme Court case has 'recognized' an asserted right within the meaning of § 2255(f)(3) if it has formally acknowledged that right in a definite way." Brown, 868 F.3d at 301. Here, the defendant contends that Johnson "recognized that it is patently unfair to sentence someone to increased punishment under [the residual clause] in any context." Def.'s Supp. Mot. at 41. However, the Supreme Court did not recognize that the ACCA's residual clause is "patently unfair," id., which the defendant appears to assume would encompass the broad reach of due process principles he seeks to invoke in this case, see id. at 28 (arguing that the defendant's "sentence . . . violate[s] [ ] due process because [it] (1) . . . is based on 'misinformation of constitutional magnitude'; (2) is based on improper or inaccurate information more generally; and (3) violates substantive due process guarantees"). Rather, Johnson recognized only that the residual clause violated the Due Process Clause's "prohibition of vague criminal laws." __ U.S. at __, 135 S. Ct. at 2555. Moreover, as Beckles makes clear, the right recognized in Johnson does not apply in "any context," Def.'s Supp. Mot. at 41, but only in the context of a residual clause "that fix[es] the permissible sentences for criminal offenses," i.e., residual clauses that are subject to void-for-vagueness challenges, __ U.S. at __, 137 S. Ct. at 892. Thus, it is not surprising that the defendant does not cite, nor has the Court been able to locate, any case concluding that Johnson recognized a right not to be sentenced under the residual clause of the advisory Guidelines. As other courts have concluded, "Beckles [ ] excluded from the scope of Johnson's rule those sentencing provisions that advise, but do not bind, a sentencing court or otherwise 'fix' a defendant's sentence." McCandless v. United States, Crim. Action No. 10-00793-1 DKW, 2017

WL 4019415, at *4 & n.9, *5 (D. Haw. Sept. 12, 2017), certificate of appealability denied, No. 17-16964, 2018 WL 1586964 (9th Cir. Jan. 30, 2018), cert. denied, 138 S. Ct. 2592 (2018); see Moore, 871 F.3d at 84 (observing that "Beckles declared Johnson [ ] categorically inapplicable to the post-Booker advisory [G]uidelines"). Accordingly, there exists no basis for this Court to conclude that Johnson even considered the right asserted by the defendant in this case, let alone "formally acknowledged that right in a definite way." Brown, 868 F.3d at 301; see Fox v. United States, Crim. Action No. 13-00564-1 DKW, 2018 WL 650200, at *6 (D. Haw. Jan. 31, 2018) (rejecting the defendant's § 2255 motion as untimely because "[h]is due process claim— framed as the 'arbitrary' and 'unreliable' determination that his prior conviction was a 'crime of violence' [under the advisory Guidelines]—d[id] not spring from a right newly recognized by Johnson"); see also McCandless, 2017 WL 4019415, at *3, *5 (rejecting the defendant's attempt "to extrapolate a newly recognized right from . . . the principles animating the [Johnson] decision" by arguing that "his career offender designation under the Guidelines was 'unreliable' and 'arbitrary'").[5]

The defendant's counterarguments are also unavailing. As an initial matter, the defendant argues that "the dispositive question [under § 2255(f)(3)] is whether [he] has 'asserted' that his sentence violates [the right recognized in] Johnson," not "[w]hether that right in fact applies to the facts of [his] case such that he may benefit from it[, which] is a separate[] merits issue," and, thus, his motion is timely because it "unquestionably . . . 'asserts' that his sentence violates a right newly recognized by the Supreme Court in Johnson." Def.'s Reply at 2. The Court must reject the defendant's position for at least two reasons. First, his position

---

[5] The defendant appears to suggest that Johnson implicates the advisory Guidelines because it "cit[ed] advisory Guidelines cases." Def.'s Reply at 3 (citing Johnson, __ U.S. at __, 135 S. Ct. at 2560). However, Johnson cited these cases only for the proposition that courts have "had trouble making sense of the residual clause," __ U.S. at __, 135 S. Ct. at 2559–60, and, unlike in Beckles, did not take any position on the legality of the Sentencing Guidelines' residual clause.

contradicts the plain language of § 2255(f)(3), which explicitly provides that the statute of limitations runs from "the date on which the right asserted was initially recognized by the Supreme Court," and further provides that § 2255(f)(3) applies only if "that right has been newly recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3) (emphases added); see Dodd, 545 U.S. at 358 ("That clause—'if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review'—imposes a condition on the applicability of [§ 2255(f)(3)]."). As other courts have recognized, this language requires this Court to determine not only that the defendant has alleged that the Supreme Court has recognized the right asserted, but whether the Supreme Court has in fact recognized the right asserted by the defendant. See, e.g., Brown, 868 F.3d at 301 (observing that "only the Supreme Court can recognize a new right under § 2255(f)(3)," and, "[c]onsequently, to find [a] motion timely [under § 2255(f)(3), the Court] must conclude that it relies on a right 'recognized' in Johnson or another more recent Supreme Court case"); Fox, 2018 WL 650200, at *5 ("The timeliness inquiry[] [under § 2255(f)(3)] turns on whether [a] [m]otion asserts the particular right recognized by Johnson[.]" (emphasis added)); United States v. Davis, Civ. Action No. 16-832, 2016 WL 11257359, at *4 (E.D. Va. Sept. 28, 2016) ("[T]he determination whether defendant's motion is timely depends on whether the 'right asserted' by defendant here is the same 'right' that was 'newly recognized' by the Supreme Court in Johnson." (emphasis added)). Although some courts have concluded that any inquiry into whether "the right [ultimately] applies to [the defendant's] situation" is inappropriate under § 2255(f)(3), Cross, 892 F.3d at 294, they have nonetheless found it necessary to assess whether the right asserted by the defendant was indeed recognized by the Supreme Court, see, e.g., id. (observing that "[u]nder Johnson, a person has a right not to have his sentence dictated by the unconstitutionally vague language of the mandatory

12

residual clause," and concluding "that the requirements of [§] 2255(f)(3) [we]re met" because the defendants "assert[ed] precisely that right" (emphasis removed)).[6]

Second, adopting the defendant's interpretation, i.e., limiting the Court's timeliness inquiry to whether the defendant has asserted a right that he claims has been recognized by the Supreme Court, without any inquiry into whether the Supreme Court indeed recognized that right, would effectively nullify the restrictions imposed by § 2255(f)(3). Specifically, it would permit "any petitioner [to] avoid [the] AEDPA's clear time limits simply by invoking a right [he claims is] newly recognized by the Supreme Court." Greer, 881 F.3d at 1245. Such a result is not only inconsistent with the plain language of § 2255(f)(3), but also contradicts Congress's intent "for the AEDPA to bring greater finality to convictions by restricting use of the writ of habeas corpus." Wyche v. United States, 317 F. Supp. 2d 1, 11 (D.D.C. 2004) (citing Williams v. Taylor, 529 U.S. 420, 436 (2000)).

The defendant additionally argues that because "'Congress in § 2255 used words such as "rule" and "right" rather than "holding[,]"' Johnson's rule must be 'broader than [its] technical holding.'" Def.'s Reply at 4 (alterations in original) (quoting Moore, 871 F.3d at 82). Rather, he

---

[6] The Court acknowledges that another member of this Court has concluded that a court conducting a timeliness inquiry under § 2255(f)(3) may not consider "whether a right has in fact been newly recognized" by the Supreme Court, United States v. Hammond, Crim. Action No. 02-294 (BAH), 2018 WL 6434767, at *8 (D.D.C. Dec. 7, 2018); however, this Court respectfully disagrees. In Hammond, the Court reasoned that the Supreme Court in Dodd "made clear that timeliness under § 2255(f)(3) is exclusively a function of that provision's first clause," id. (citing Dodd, 545 U.S. at 358), and, because "view[ing] timeliness through the lens of Johnson's scope . . . emphasiz[es] § 2255(f)(3)'s second clause," that approach "emphasizes the wrong clause," id. However, Hammond's conclusion overlooks that the first clause of § 2255(f)(3), like the second clause, requires that the right asserted "was [ ] recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). Moreover, Dodd concluded only that the second clause of § 2255(f)(3) is irrelevant to determining the date on which the statute of limitations begins to run, see 545 U.S. at 358 (finding that the defendant's "reliance on the second clause to identify the operative date is misplaced"), and expressly instructed that the second clause is otherwise critical to the timeliness inquiry, see id. (observing that § 2255(f)(3) "does not apply at all if the conditions in [its] second clause[] . . . have not been satisfied"). Additionally, this Court disagrees with Hammond's conclusion that this Circuit's decision in In re Williams instructs otherwise, because Williams addressed the burden applicable to a defendant's request for certification of a successive motion under § 2255(h), which only requires "a prima facie showing that the [defendant's] motion contains 'a new rule of constitutional law.'" Hammond, 2018 WL 6434767, at *8 (quoting In re Williams, 759 F.3d 66, 70 (D.C. Cir. 2014)).

13

argues, the right recognized in Johnson "includes [the Supreme] Court's 'analysis and reasoning,'" id. at 6 (quoting Stringer v. Black, 503 U.S. 222, 228–29 (1992)), and because "[t]he relief [he] seeks flows directly from Johnson's analysis and reasoning," the requirements of § 2255(f)(3) are satisfied, id. However, the defendant fails to cite, nor has the Court been able to locate, any decision in which a court construed the right recognized in Johnson so broadly as to encompass a challenge to the advisory Sentencing Guidelines. Indeed, the First Circuit in Moore, the case on which the defendant relies, see Def.'s Reply at 4, limited the right recognized in Johnson to "residual clause[s] . . . [that are] too vague to provide[] . . . a standard by which courts must fix criminal sentences," 871 F.3d at 80, and explicitly acknowledged that "Beckles . . . reject[ed] the application of the rule of Johnson [ ] to the advisory guidelines because [] . . . those guidelines do not fix sentences," id. at 83. Moreover, the right the defendant asserts does not "flow[] directly from Johnson's analysis and reasoning," Def.'s Reply at 6, because, as already explained, the constitutional rationale for invalidating the residual clause of the ACCA does not apply to the residual clause at issue in this case, see Beckles, __ U.S. at __, 137 S. Ct. at 892.

The defendant further argues that Beckles is not dispositive because the defendant in that case "challenged his sentence only on the grounds that the advisory Guidelines residual clause was unconstitutionally void-for-vagueness," and, thus, "none of the arguments that [the defendant] raises in the instant petition were before the Court." Def.'s Reply at 4. However, the fact that Beckles does not foreclose the defendant from raising arguments based on Johnson in a direct appeal or in an otherwise timely § 2255 motion does not establish that the Supreme Court indeed recognized the right he asserts in this case for purposes of § 2255(f)(3). See Greer, 881 F.3d at 1247 ("While [ ] courts can apply the reasoning of Johnson to support a finding that the

14

residual clause . . . [is] unconstitutional[] [ ] on direct appeal, [ ] review under the AEDPA is more limited" because the "AEDPA limits federal habeas relief to new [ ] rights recognized by the Supreme Court." (second emphasis added)). Additionally, the defendant argues that Beckles is distinguishable because the Court deemed the motion in that case timely pursuant to § 2255(f)(1), and, thus, "the question of whether Johnson newly recognized a right that would allow [a prisoner] to collaterally attack his advisory Guidelines sentence within the § 2255(f)(3) limitations period was neither presented nor addressed." Def.'s Reply at 4. Although the defendant is correct that Beckles did not consider § 2255(f)(3), as already explained, Beckles's reasoning strongly supports the conclusion that the right recognized in Johnson excludes residual clauses that do not "fix the permissible range of sentences" for criminal offenses. Beckles, __ U.S. at __, 137 S. Ct. at 892 (emphasis added); see, e.g., McCandless, 2017 WL 4019415, at *4 & n.9, *5.

The defendant also argues that the Supreme Court's opinion in Sessions v. Dimaya "undermine[s] the government's argument that Johnson recognized a new right solely with respect to the ACCA and in no other context" because, although "Johnson nowhere discussed 18 U.S.C. § 16(b), the crime-of-violence provision at issue in Dimaya[,] [ ] the Court had no trouble finding that Johnson's reasoning applied directly to § 16(b)." Def.'s Reply at 3 (citing __ U.S. __, __, 138 S. Ct. 1204, 1213 (2018)). Although the defendant correctly characterizes the Supreme Court's holding in Dimaya, as the Court already explained, even if this Court assumes that the right recognized in Johnson extends to contexts beyond the ACCA, it must nonetheless conclude that the right asserted by the defendant would fall outside the scope of that right because it purports an extension to contexts in which Johnson's constitutional rationale is not applicable. The Supreme Court's decision in Dimaya only supports this conclusion, as it, like

15

Johnson, recognized that § 16(b) is a "criminal statute" subject to "[t]he prohibition of vagueness in criminal statutes" and found § 16(b)'s residual clause invalid only on that basis. Dimaya, __ U.S. at __, 138 S. Ct. at 1212–13 (quoting Johnson, __ U.S. at __, 135 S. Ct. at 2557).

The defendant finally argues that Brown, Raybon, and Greer are "incorrect and inapposite" because they relied on "jurisprudence that is not applicable to first-time § 2255 movants" to conclude that "movants could benefit from only the Supreme Court's technical holdings." Def.'s Reply at 4–5. However, as already explained, the Court's determination that the right asserted by the defendant is not the right recognized in Johnson does not depend on these courts' narrow construction of the Johnson right as applicable only to the ACCA. See, e.g., Raybon, 867 F.3d at 630. And, in any event, the Fourth Circuit's decision in Brown relied not only on the jurisprudence objected to by the defendant, but also the plain meaning of the word "recognize," 868 F.3d at 301 ("To 'recognize' something is (1) 'to acknowledge [it] formally' or (2) 'to acknowledge or take notice of [it] in some definite way.'" (quoting Merriam-Webster Tenth Collegiate Dictionary 976 (1996))), which is indisputably relevant to the Court's interpretation of § 2255(f)(3), see, e.g., Wall v. Kholi, 562 U.S. 545, 551 (2011) (instructing that courts interpreting the AEDPA should "begin by considering the ordinary understanding of" the statute's terms).

In sum, the defendant has failed to establish that the right asserted in his motion "was [ ] recognized by the Supreme Court," which renders § 2255(f)(3) inapplicable to his case. 28 U.S.C. § 2255(f)(3). Thus, because the defendant did not file his motion within the limitations period set forth in § 2255(f)(1), and he does not assert that any other subsection of § 2255(f) applies, the defendant has failed to demonstrate that his motion is timely under § 2255(f).

## B.  Equitable Tolling

The defendant contends that even if his motion is not timely under § 2255(f)(3), he is entitled to equitable tolling of the one-year statute of limitations under § 2255(f)(1) because, "until Johnson, [he] had no claim challenging his sentence based on the identical[] [ ] sentencing Guidelines provision," but "[a]s soon as the claim accrued, [he] filed the motion." Def.'s Supp. Mot. at 45–46.[7]  The government responds that equitable tolling is not warranted because "the fact that unfavorable precedent would have stood in the way of [the] defendant's claims had he filed within one year of his conviction becoming final does not constitute an extraordinary circumstance that stood in [the] defendant's way of timely filing." Gov't's Opp'n at 15.  The Court agrees with the government.

A defendant is "entitled to equitable tolling" under § 2255(f) if he can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649–51 (2010) (internal quotation marks and citation omitted); see United States v. McDade, 699 F.3d 499, 504 (D.C. Cir. 2012) ("hold[ing], in view of Holland, that equitable tolling applies to motions filed pursuant to § 2255"). However, "[e]quitable tolling[] [ ] is to be employed 'only sparingly,'" Cicero, 214 F.3d at 203 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)), and, thus, "has been applied in the context of the AEDPA only if 'extraordinary circumstances

[7] The defendant also argues that equitable tolling is warranted because "it would be unconscionable to enforce the limitation period against [him, given that] . . . applying the Guidelines residual clause to increase his sentence was a fundamental error that resulted in a complete miscarriage of justice and was inconsistent with the rudimentary demands of fair procedure such that this case presents exceptional circumstances where the need for habeas relief is apparent." Def.'s Supp. Mot. at 46.  However, this argument is better addressed to the defendant's claim that the "miscarriage of justice exception" to the limitation period of § 2255 applies to his case, see id.; see also McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (explaining that the "fundamental miscarriage of justice exception[] is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons" (citation omitted)), and, thus, the Court addresses the defendant's argument in its discussion of that exception, see infra Part III.C.

beyond a prisoner's control ma[d]e it impossible to file a petition on time,'" id. (quoting Calderon v. U.S. Dist. Court, 128 F.3d 1283, 1288 (9th Cir. 1997)).

The Court cannot conclude that the defendant has satisfied the stringent requirements for equitable tolling. As the government correctly notes, see Gov't's Opp'n at 14, this Circuit has recognized in the AEDPA context that "the equitable tolling standard 'focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant's control prevented him from filing within the limitations period at all.'" Head v. Wilson, 792 F.3d 102, 111 (D.C. Cir. 2015) (quoting Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (en banc)). As the Circuit explained, "[t]he demands of finality oblige a petitioner to raise those claims that might possibly have merit even where he thinks the court will be unsympathetic." Id. (alteration in original) (quoting Whiteside, 775 F.3d at 185). This reasoning is consistent with the reasoning of a number of other courts that have rejected claims that favorable changes in the law warrant equitably tolling the AEDPA's limitation periods. See id. at 111 & n.11 (collecting cases from the Fourth, Seventh, Eighth, and Ninth Circuits); see, e.g., Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir. 2005) (explaining that applying equitable tolling in such a circumstance "would open the door for any [ ] prisoner to file a habeas petition anytime a [ ] court issues" a new decision, and such "an interpretation cannot be squared with the goals of finality that are central to the AEDPA").

The defendant argues that this Circuit's decision in Head is inapposite because "it is not simply that 'unfavorable precedent' stood in the way of [his] claim[; r]ather, [he] had no claim at all until Johnson[] [because] Johnson created the claim that [he] brings." Def.'s Reply at 7. However, for the reasons already explained, Johnson did not recognize the right upon which the defendant relies, and, thus, it did not "create[] [his] claim." Id. Moreover, the defendant does

not cite any controlling precedent that would have rendered his claims "entirely meritless" had he timely raised them. Whiteside, 775 F.3d at 186 (in rejecting equitable tolling based on new precedent, noting that the defendant's "claims were not entirely meritless even under then-existing precedent"); see Def.'s Supp. Mot. at 45–46 (asserting only that, "[i]n two . . . cases, the Supreme Court had expressly rejected the dissent's assertions that the residual clause [of the ACCA] was . . . 'insusceptible of an interpretation that enables principled, predictable application,'" and, "[c]onsequently, multiple courts had rejected similar challenges to the Guidelines residual clause" (internal quotation marks and citation omitted)). At most, Johnson only increased the defendant's potential for success on the merits of his claim. However, "a party is 'not excused from timely filing his claim because . . . the law might be inhospitable' inasmuch as 'the only sure way to determine whether a suit can be maintained is to try it.'" Head, 792 F.3d at 111 (quoting Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 61 (D.C. Cir. 2014)); see Whiteside, 775 F.3d at 186 ("Equitable tolling [ ] may not be applied where, as here, the only impediment to timely filing was the discouragement felt by [the] petitioner when calculating his odds of success."). Thus, the Court must reject the defendant's claim that equitable tolling is warranted in this case.

## C.     Miscarriage of Justice/Actual Innocence Exception

The defendant next argues that his case qualifies for the "miscarriage of justice exception" to the limitation period of § 2255 "because [he] is actually innocent of the sentence imposed." Def.'s Supp. Mot. at 46. Specifically, he argues that he "is legally ineligible for the recidivist sentencing enhancement applied to him—i.e., he is factually innocent of having two or more qualifying prior convictions, a condition necessary to justify his current sentence." Id. at 47. The government responds that, "[t]hough the D.C. Circuit has not spoken on the matter,

numerous circuits have considered and rejected claims that the actual innocence exception applies to 'innocence' of a noncapital sentencing enhancement." Gov't's Opp'n at 16. It further argues that, "even if the actual innocence exception could apply to an advisory [G]uideline calculation, [the] defendant's claim that his prior convictions did not qualify him as a career offender is a mere assertion of legal insufficiency, rather than an assertion of factual innocence as is required for the exception." Id. Again, the government has the better argument.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Id. at 392 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)). However, the Supreme Court has cautioned that "[t]he miscarriage of justice exception[] . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 394–95 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Additionally, some circuit courts have concluded that the miscarriage of justice exception also "applie[s] . . . where [ ] innocence is occasioned not by new evidence but by an intervening, controlling change in the law as applied to a static set of facts." Phillips v. United States, 734 F.3d 573, 581 n.8 (6th Cir. 2013); see Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir. 2014) (recognizing that a petitioner may demonstrate actual innocence by showing that, "in light of subsequent case law[,] [ ] he cannot, as a legal matter, have committed the alleged crime"). Nonetheless, "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." Schlup, 513 U.S. at 321.

Although "[t]he Supreme Court has held that, in cases involving procedural default (as opposed to [the] AEDPA's statute of limitations), the actual innocence exception applies to . . . claims of actual innocence of a capital sentence, . . . [it] has declined to decide, and [other] courts of appeals disagree, whether the actual innocence exception extends to claims of actual innocence of a noncapital sentence." United States v. Peterson, 916 F. Supp. 2d 102, 107 n.4 (D.D.C. 2013) (internal citations omitted). However, even assuming that the exception does apply to a noncapital sentence such as the defendant's, the defendant has failed to demonstrate that the exception applies to his case. As the Supreme Court has instructed, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). Accordingly, this Court agrees with other courts which have concluded that "[a]ctual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes." United States v. Pettiford, 612 F.3d 270, 284 (4th Cir. 2010); see Marrero v. Ives, 682 F.3d 1190, 1195 (9th Cir. 2012) ("We [ ] hold that the purely legal argument that a petitioner was wrongly classified as a career offender under the [ ] Guidelines is not cognizable as a claim of actual innocence under the escape hatch."); McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011) (concluding that the defendant's "claim that he was erroneously sentenced as a career offender because one of his prior convictions d[id] not qualify as a 'crime of violence' . . . is one of legal, rather than factual, innocence and thus fails to fall within the actual innocence exception's purview"); Peterson, 916 F. Supp. 2d at 106–07 (concluding that the defendant's argument that his prior conviction "c[ould not] be the predicate for a career offender sentence[] [ ] is an objection to the legal classification of [his] offense and

[ ] not based in fact," and, thus, his "claim that he [wa]s actually innocent of his career offender sentence c[ould not] excuse his untimely filing").

Here, although the defendant claims that he is "factually innocent of having two or more qualifying prior convictions," Def.'s Supp. Mot. at 47, he does not claim that he did not commit the offenses underlying those convictions. Indeed, he concedes that his alleged innocence of his career offender designation is based on his claim that he is "legally ineligible for the recidivist sentencing enhancement applied to him." Id. (emphasis added). Nor does he claim that Johnson rendered the conduct underlying his conviction in this case or his prior convictions no longer criminal. See, e.g., Phillips, 734 F.3d at 581 n.8. And, although the defendant insists that "it would be unconscionable to enforce the limitation period against [him] because[] . . . applying the Guidelines residual clause to increase his sentence was a fundamental error that resulted in a complete miscarriage of justice and was inconsistent with the rudimentary demands of fair procedure," Def.'s Supp. Mot. at 46, "[w]ithout a demonstration of actual 'innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim,'" United States v. Baxter, 761 F.3d 17, 29 (D.C. Cir. 2014) (quoting Schlup, 513 U.S. at 316). Thus, the Court must conclude that the actual innocence exception is inapplicable to the defendant's claim.

**D.      The Suspension Clause of the United States Constitution**

The defendant finally argues that "to the extent that § 2255(f) bars [his] claim as untimely, it violates the Suspension Clause as applied to him because it leaves him with no meaningful opportunity to demonstrate that he is incarcerated 'pursuant to "the erroneous application or interpretation" of relevant law.'" Def.'s Supp. Mot. at 50 (quoting Boumediene v.

Bush, 553 U.S. 723, 779 (2008)).  The government responds that § 2255(f) does not "unconstitutionally suspend the writ" because it "only limits the filing of a § 2255 motion," which is "distinct[] [from] petitions for writs of habeas corpus."  Gov't's Opp'n at 17.  It further argues that "the savings clause of § 2255(e) prevents § 2255 from unconstitutionally suspending the writ by preserving access to the writ when the remedy by motion under § 2255 'is inadequate or ineffective to test the legality of [the prisoner's] detention.'"  Id. at 17–18 (alteration in original) (quoting 28 U.S.C. § 2255(e)).

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. art. I, § 9, cl.2.  As the defendant correctly notes, see Def.'s Supp. Mot. at 50, the Suspension Clause guarantees a detainee "a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law," Boumediene, 553 U.S. at 779 (citation omitted).  However, "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."  Swain v. Pressley, 430 U.S. 372, 381 (1977).  And, as the defendant concedes, see Def.'s Supp. Mot. at 49, courts have held that § 2255 is not per se an "inadequate or ineffective" substitute for the writ because, under § 2255(e), "habeas corpus remains available whenever § 2255 is inadequate or ineffective," Triestman v. United States, 124 F.3d 361, 377 n.20 (2d Cir. 1997) (concluding that § 2255(e) "is proof that § 2255, by its own terms, cannot possibly constitute a suspension of the Great Writ"); see 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained . . .

unless . . . the remedy by motion is inadequate or ineffective to test the legality of his detention.").

The defendant argues that he had no "meaningful opportunity" to challenge the constitutionality of the residual clause of § 4B1.2 because, prior to Johnson, he "could [not] establish that he was unlawfully sentenced." Def.'s Supp. Mot. at 50. However, as already explained, Johnson did not create the claim the defendant seeks to pursue. And, notably, he acknowledges that prisoners in other circuits brought claims identical to the claim raised in Johnson before Johnson was decided. See Def.'s Supp. Mot. at 45 (citing United States v. Mobley, 687 F.3d 625, 632 n.7 (4th Cir. 2012)); Mobley, 687 F.3d at 632 n.7 (addressing a prisoner's argument "that the residual clause of USSG § 4B1.2(a)(2) should be stricken as unconstitutionally vague"). Thus, the defendant's position ultimately appears to rest on his belief that, prior to Johnson, his claim would have been rejected. See Def.'s Supp. Mot. at 45 (noting that "the Supreme Court had expressly rejected the assertions that the residual clause [of the ACCA] . . . was 'insusceptible of an interpretation that enables principled, predictable application[,]' [and c]onsequently, multiple courts had rejected similar challenges to the Guidelines residual clause" (internal citation omitted)); see also id. at 50 ("Thus, by the time that [he] could establish that he was unlawfully sentenced, it was too late to file a claim under § 2255(f)(1)." (emphasis added)). However, as the Tenth Circuit has explained, the question of whether § 2255 is "inadequate or ineffective" "is concerned with process—ensuring the petitioner an opportunity to bring his argument—not with substance—guaranteeing nothing about what the opportunity promised will ultimately yield in terms of relief." Prost v. Anderson, 636 F.3d 578, 584 (10th Cir. 2011) (emphasis removed). And, "[e]ven if a prisoner's claim [would] fail[] under [then-controlling] precedent, a motion to vacate remains an adequate and

effective remedy for a prisoner to raise the claim and attempt to persuade the court to change its precedent." McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1099 (11th Cir. 2017). To the extent that the defendant is correct that Supreme Court precedent would have required this Court to reject his claim, he nonetheless could have appealed the Court's decision to this Circuit and then could have sought review of the Circuit's decision in the Supreme Court. Accordingly, the Court concludes that, "[b]ecause [the defendant] 'was free to bring' []his claim . . . in [a timely] motion to vacate, the remedy by motion was an 'adequate and effective means for testing such an argument.'" Id. (quoting Prost, 136 F.3d at 580) (rejecting the defendant's argument that § 2255 was "inadequate or ineffective" because it barred him from bringing a successive petition challenging his sentencing enhancement under the ACCA based on an intervening change in the Supreme Court's interpretation of that statute); see Prost, 636 F.3d at 590–91 (rejecting the defendant's argument that § 2255 was "inadequate or ineffective" because it barred him from bringing a successive petition based on a "previously foreclosed statutory interpretation" of the statute of his conviction).

The defendant's remaining arguments are also unpersuasive. He argues that § 2255 violates the Suspension Clause in his case because, "[i]n light of Johnson, [he] is factually and legally innocent of his career offender classification and enhanced sentence," Def.'s Supp. Mot. at 50, relying on the Third Circuit's observation that "[w]ere no [ ] avenue of judicial review available for a party who claims that s/he is factually or legally innocent as a result of a previously unavailable statutory interpretation, we would be faced with a thorny constitutional issue," id. (quoting In re Dorsainvil, 119 F.3d 245, 248 (3d Cir. 1997)). Although some circuits have found § 2255 to be "inadequate or ineffective" when it deprives a prisoner of an opportunity to demonstrate that he is "actually innocent," see, e.g., Wooten v. Cauley, 677 F.3d

303, 307 (6th Cir. 2012) (citation omitted), as already explained, "'actual innocence' means factual innocence, not mere legal insufficiency," id. (quoting Bousley, 523 U.S. at 623), and the defendant's claim is a legal one, see, e.g., Pettiford, 612 F.3d at 284. Moreover, In re Dorsainvil is distinguishable from this case. In that case, the defendant argued that "he ha[d] been convicted and imprisoned for conduct that is not criminal" based on a "previously unavailable statutory interpretation" of the statute of his conviction. In re Dorsainvil, 119 F.3d at 248. In holding that § 2255 was an "inadequate and ineffective" remedy, the Third Circuit emphasized the defendant's "unusual position—that of a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate." Id. at 251. Here, the defendant does not, and could not, claim that Johnson would "negate" the crime for which he was convicted, nor the crimes that supported his status as a career offender, and, thus, his case does not present the "unusual circumstance" that the Third Circuit believed warranted its ruling. Id.; see In re Jones, 226 F.3d 328, 333–34 (4th Cir. 2000) ("conclud[ing] that § 2255 is inadequate and ineffective to test the legality of a conviction when[, inter alia,] subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal").

Thus, the Court concludes that application of § 2255(f) does not violate the Suspension Clause under the circumstances presented in this case. Accordingly, the defendant's motion is untimely under § 2255(f), and the Court must deny it. See, e.g., Cicero, 214 F.3d at 205.

## IV.    CONCLUSION

For the foregoing reasons, the Court must conclude that the defendant's motion to vacate the sentence imposed by this Court is untimely under 28 U.S.C. § 2255(f). Additionally, the Court must conclude that equitable tolling of § 2255(f)'s limitation period is unwarranted in this

case and that the miscarriage of justice/actual innocence exception to § 2255(f) does not apply.

The Court must finally conclude that applying § 2255(f) to bar the relief requested by the

defendant does not violate the Suspension Clause of the United States Constitution.

Accordingly, the Court must deny the defendant's motion.[8]

   **SO ORDERED** this 25th day of February, 2019.

                                                     REGGIE B. WALTON
                                                     United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.